UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
VINCENT FUENTES,

                           Plaintiff,

          -against-

LELABO INC., THE ESTEE LAUDER COMPANIES,
INC, and CALI STRAUHS, Individually,

                         Defendants.
------------------------------------------------------------------------X

Docket No.:

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff VINCENT FUENTES ("Fuentes" or "Plaintiff"), by his attorneys, JOSEPH & NORINSBERG, LLC., brings this Complaint against Defendants LELABO, INC. ("LeLabo"), THE ESTEE LAUDER COMPANIES, INC. ("Estee Lauder"), and CALI STRAUHS ("Strauhs"), collectively referred to as "Defendants," alleges as follows:

### NATURE OF CASE

1. This is a civil action seeking monetary damages based upon Defendants' blatant violations of Plaintiff's civil rights pursuant to: (i) Title VII of the Civil Rights Act of 1964, 42 U.S.C §§ 2000e et seq. ("Title VII"); (ii) the unlawful discrimination and hostile work environment provisions contained in Title 8 of the Administrative Code of the City of New York, also known as the New York City Human Rights Law ("NYCHRL"); (iii) the unlawful retaliation provision contained in the NYCHRL; (iv) the anti-aiding and abetting provisions of the NYCHRL; (v) and any other cause(s) of action that can be inferred from the facts set forth herein.

### PRELIMINARY STATEMENT

2. Defendant Lelabo operates as a fragrance chain boutique with various boutiques located throughout New York. LeLabo is a subsidiary of Defendant Estee Lauder with its Human

Relations Department located inside the Estee Lauder building, located at 767 5th Avenue, New York, N.Y. 10153.

3. In or about January 2015, Plaintiff began his employment for LeLabo as a Lab Technician at LeLabo's boutique located at 14 West 29th Street, New York, N.Y. In August 2016, LeLabo promoted Plaintiff to the position of Assistant Manager. During all relevant times herein, Plaintiff's direct supervisor was Defendant Straughs.

4. At all times relevant herein, Defendants permitted and fostered sexual harassment, thus creating a hostile work environment for Plaintiff. Specifically, Strauhs' friend, Lazarus Douvus, verbally and physically sexually harassed Plaintiff on a frequent basis, and Defendants failed to engage in any remedial actions. Worse still, Strauhs aided and abetted in the unlawful conduct by continuing to invite Lazarus to the store.

5. In March 2017, Plaintiff submitted a written complaint to LeLabo's Human Relations Department about the persistent sexual harassment and hostile work environment. However, due to Plaintiff's sexual orientation, LeLabo did not take Plaintiff's complaints seriously. Instead, LeLabo launched a sham investigation, confronting Plaintiff about false and blatantly pretextual accusations made against him, in an attempt to chill Plaintiff from engaging in protected activity. Further, in retaliation for Plaintiff's complaint, Defendants ultimately terminated his employment. As such, in violation of the NYCHRL, Defendants sexually discriminated against Plaintiff, fostered and permitted Plaintiff's sexual harassment, and subjected Plaintiff to a hostile work environment.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action, Pursuant to 28 U.S.C. §§ 1331 and 1343, as it involves federal questions regarding the deprivation of the Plaintiff's rights under Title VII.

7. The Court has supplemental jurisdiction over Plaintiff's related claims arising under state law pursuant to 28 U.S.C. § 1367(a), as these claims also concern Defendants' unlawful conduct stemming from Plaintiff's employment.

8. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(1), as at least one Defendant resides within this judicial district.

## PROCEDURAL REQUIREMENTS

9. On or about August 14, 2017, Plaintiff filed a Complaint with the Equal Employment Opportunity Commission, ("EEOC"), alleging sexual harassment, hostile work environment, and retaliation, among other claims.

10. On or about March 13, 2018, the EEOC issued Mr. Fuentes a Dismissal and Notice of Right to Sue, based on Plaintiff's claims under Title VII. (See Exhibit A).

11. This Complaint is being filed within 90 days of said date.

12. All other administrative prerequisites have been met.

## JURY DEMAND

13. Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

## PARTIES

14. Plaintiff, Vincent Fuentes, is a gay male and was at all relevant times a resident of the City and State of New York.

15. At all relevant times, Plaintiff was a "person" and an "employee" within the meaning of the NYCHRL.

### *The Estee Lauder Companies, Inc.*

16. The Estee Lauder Companies, Inc. ("Estee Lauder"), is a business corporation with its principal offices located at 767 Fifth Avenue, New York, N.Y.

17. At all relevant times, Estee Launder employed fifteen (15) or more employees, within the meaning of Title VII.

18. At all relevant times, Estee Lauder employed four (4) or more employees and was an "employer" within the meaning of the NYCHRL.

### *Le Labo, Inc.*

19. Defendant LeLabo, Inc. ("LeLabo"), is a wholly-owned subsidiary of Defendant Estee Lauder Companies, Inc., with its principal offices located at 767 Fifth Avenue, New York, N.Y.

20. At all relevant times, LeLabo employed fifteen (15) or more employees, within the meaning of Title VII.

21. At all relevant times, LeLabo employed four (4) or more employees and was an "employer" within the meaning of the NYCHRL.

### *Cali Strauhs*

22. Defendant, Cali Strauhs ("Strauhs"), is an individual who was Plaintiff's immediate supervisor at LeLabo, and at all relevant times, was a resident of the City and State of New York.

23. At all relevant times, Defendant Strauhs was an "employee" within the meaning of the NYCHRL and was acting within the scope of her employment as a supervisor and managerial agent of LeLabo, with full authority to act on behalf of the Defendant companies.

24. At all relevant times, the Defendants LeLabo and Estee Lauder, acted both jointly and severally, through their authorized employees and agents, acting within the scope of their authority, in denying Fuentes his rights under the foregoing laws.

## FACTUAL ALLEGATIONS

25. Plaintiff began his employment as a lab technician for Defendant LeLabo, a perfume boutique, located at 14 West 29th Street, New York, NY, on or about January 2015.

26. At all relevant times, Defendant Strauhs was Plaintiff's direct supervisor.

*Lazarus Harasses Plaintiff and Defendants Willfully Ignore His Improper Conduct*

27. Beginning in the summer of 2015, Strauhs invited her friend, Lazarus Douvos, a gay male aged 50, to frequent the store on a regular basis.

28. Lazarus soon began a pattern of sexual harassment against Fuentes, which was often carried out in the presence of Strauhs and was encouraged by Strauhs.

29. Lazarus first began the pattern of harassment – which Strauhs personally observed – by asking Fuentes to go out on a date, and Fuentes answered no.

30. Lazarus did not accept Plaintiff's refusal and continued to badger him, repeatedly requesting to go out on a date.

31. Fuentes was repulsed and offended by Lazarus' overtures, and he communicated that fact to his immediate supervisor, Strauhs.

32. Lazarus continued the harassment, making repeated overtures to Fuentes to engage in sexual contact on most visits to the store, which occurred two to three times per work week.

33. Lazarus also made various obscene and salacious statements about Plaintiff's private parts, including reference to the size of Fuentes' penis, or other comments or questions about his genitals or sexual prowess.

5

34. This repeated course of harassment took an emotional toll on Fuentes as Lazarus' comments and overtures were disturbing and stressful.

35. Fuentes complained to Strauhs many times, but she failed to initiate an investigation or act upon any of his complaints. She failed to take steps to preserve the Plaintiff's rights, despite having personally witnessed many of the offensive actions.

### *Plaintiff Is Promoted But The Hostile Work Environment Only Worsens*

36. LeLabo promoted the Plaintiff to an assistant manager on or about August 2016.

37. At the same time, Lazarus' harassing behavior against Fuentes escalated in intensity, and Lazarus often asked Fuentes to go to the back room with him to have sex.

38. During this period, Lazarus did on several occasions attempt to have physical contact with Fuentes by brushing against him, touching him or making overtures to touch him, all of which was intensely disturbing to Fuentes.

39. The escalation of harassment by Lazarus wore Fuentes down and made it difficult for him to do his work.

### *Plaintiff Submits a Written Complaint to HR about the Sexual Harassment and Defendants Ignore His Complaints and Begin to Retaliate Against Him*

40. After many failed attempts during his employment to obtain relief from the Defendants, Fuentes sent an email complaint to LeLabo's Human Relations Department on March 16, 2017, setting forth the actions of Lazarus and the refusal of Strauhs to bring an end to the harassment.

41. Several months later, after a long period of silence, the Human Relations office of Estee Lauder summoned Fuentes to the Estee Lauder building. The meeting included Hayward Williams ("Williams"), a Human Relations official for Estee Lauder, and the individual who was the Human Relations officer for LeLabo.

42. Plaintiff believed that his written complaint would be discussed at the meeting, and in response, policies would be put into place to protect employees, like himself, from sexual harassment. Likewise, Plaintiff believed it would be established that a LeLabo employer, like Strauhs, could no longer extend a standing invitation to an individual who continuously made vulgar comments and unwanted advances toward other employees at the store.

43. Plaintiff could not have been more wrong. In fact, Plaintiff's complaint was not discussed *at all* at the meeting. Williams only stated vaguely that "we are investigating it." Moreover, Williams failed to ask *any* questions about Fuentes' complaint that Lazarus had tormented and sexually harassed him at work over an extended time, under the protection, knowledge, and facilitation of Strauhs. These facts were completely ignored.

44. Instead, Williams turned the tables and used the meeting to interrogate Fuentes. Instead of asking questions about the conduct of Lazarus and Strauhs, the individuals who had engaged in misconduct, William asked questions about Plaintiff's conduct, which were inflammatory, inappropriate, entirely fictitious, and constituted an attempt to chill Fuentes from engaging in protected activity. Indeed, Fuentes immediately regretted ever having made a complaint about the company's unlawful conduct.

45. Apparently, Strauhs had responded to Fuentes' complaint by creating a list of accusations against him, which were designed to further denigrate his standing and cast false aspersions on his character. Strauhs suggestions of Plaintiff's impropriety were gross mischaracterizations of ordinary events at the store.

46. Moreover, Defendants' double standard was shocking: Plaintiff's actions were suddenly being held up to a microscope, while the actions of Strauhs were being shoved under the rug.

7

47. Although Williams claimed that Fuentes' charges were being investigated, neither LeLabo nor Estee Lauder ever investigated Fuentes' charges, nor did they interview any employees, supervisory personnel or others who would know about the improper events occurring at Fuentes' work location, nor did they question Lazarus, or seek out other witnesses to the alleged harassment, or conduct a detailed questioning of Strauhs regarding the allegations.

48. The result of the sham "investigation" by Defendants LeLabo and Estee Lauder, was that the Defendants decided that Fuentes would be transferred to the Soho store, as of April 11, 2017, which was the same date of the improper interrogation of Fuentes.

49. The Defendants LeLabo and Estee Lauder had perpetrated a pretextual meeting with Fuentes, which had nothing to do with investigating his allegations, but which was designed to get Fuentes moved out of his place of employment and sent to an inconvenient location, as proved by the fact that the Defendants ordered Fuentes to be immediately transferred to the other store without even investigating Fuentes' answers to the trumped-up questions.

50. As part of the transfer, Fuentes was in effect demoted to a "sales rep" position, with less responsibility and less status in the companies.

51. Plaintiff did not enjoy his work at the new location, and he asked LeLabo that he be reinstated to his regular assistant manager position at the old location. The Defendants did order him transferred back to that location, as of April 24, 2017.

52. However, when Plaintiff resumed work at the old location, he immediately discovered that he had been disconnected from the system and could not access his account, files and the inventory of the store.

53. Then, on the very next day of work, April 25, 2017, Plaintiff was called to a meeting at the Estee Lauder Building, located at 28 West 23rd Street, New York, NY, at 9:00 a.m. Williams was at the meeting, along with Estee Lauder's General Manager, Sophie Deumier.

54. At the meeting, Defendants unceremoniously told Fuentes that he was fired. No reason was given for this decision. No mention was made that this "termination" came two weeks after the "sham, pretextual investigation."

55. The Defendants fired Fuentes without ever investigating his complaint that he had been sexually harassed by Lazarus, who was protected throughout by his immediate supervisor, Strauhs.

56. Each and all of the acts of the Defendant Cali Strauhs alleged herein were done by her while acting as Fuentes' immediate supervisor, and within the scope of her authorized employment duties on behalf of the other two Defendants.

## FIRST CLAIM AGAINST DEFENDANTS
*(Sexual Harassment and Hostile Work Environment in Violation of Title VII)*

57. Plaintiff repeats, reiterates and realleges each and every allegation set forth above with the same force and effect as if here fully set forth at length.

58. Defendants discriminated against Plaintiff on the basis of his gender and sexual orientation, in violation of Title VII, by creating, fostering, condoning, accepting, ratifying, and/or otherwise failing to prevent or to remedy a hostile work environment that included, among other things, severe and pervasive sexual harassment of Plaintiff.

59. As a direct and proximate result of Defendants' discriminatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, for which he is entitled to an award of monetary damages and other relief.

60. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

61. Defendants' unlawful discriminatory actions constitute malicious, willful, and wanton violations of Title VII, for which Plaintiff is entitled to an award of punitive damages.

## SECOND CLAIM AGAINST DEFENDANTS
*(Sexual Harassment, Hostile Work Environment under the NYCHRL)*

62. Plaintiff repeats, reiterates and realleges each and every allegation set forth above with the same force and effect as if here fully set forth at length.

63. The Plaintiff is a member of a protected class under the NYCHRL, N.Y.C. Admin. Code § § 8-102 to 8-107, by virtue of his sexual orientation.

64. The NYCHRL prohibits discrimination in the terms, conditions, and privileges of employment on the basis of an individual's sexual orientation, including homosexuality.

65. Defendants discriminated against Plaintiff in violation of the NYCHRL by permitting and fostering a hostile work environment, in the form of extended and pervasive sexual harassment.

66. Specifically, even after personally witnessing Plaintiff's rejections to Lazarus verbal and physical overtures and receiving a complaint from Plaintiff of same, Strauhs continued to invite her friend Lazarus to frequent the store two to three times per week.

67. Defendants permitted and fostered a hostile work environment by failing to engage in any remedial action.

68. Moreover, even when Defendants were made aware of the foregoing unlawful occurrences, Defendants failed to preserve Plaintiff's rights by conducting a sham investigation which resulted in Plaintiff's transfer to an inconvenient location and termination, two weeks later.

69. Because of Defendants' discriminatory acts, Plaintiff has suffered and will continue to suffer losses, including loss of past and future earnings and other employment benefits, and has suffered other monetary damages and compensatory damages for, *inter alia*, mental anguish, emotional distress, humiliation, loss of enjoyment of life's pleasures, and loss of reputation.

### THIRD CLAIM AGAINST DEFENDANTS
*(Retaliation Under the NYCHRL)*

70. Plaintiff repeats, reiterates and realleges each and every allegation set forth above with the same force and effect as if here fully set forth at length.

71. The NYCHRL prohibits retaliation by any person against any individual who in good faith complains about discriminatory practices to which he/she has been subjected.

72. As described above, the Defendants retaliated against Plaintiff in violation of the NYCHRL.

73. Specifically, Plaintiff reported the unlawful and inexcusable behavior of Lazarus and Strauhs to LeLabo. In response, Defendants conducted a sham and pretextual investigation and then unlawfully terminated Plaintiff's employment.

74. Defendants failed to give any valid reason for its termination of Plaintiff. In fact, Defendants fired Plaintiff because he engaged in protected activity when he complained about the persistent and pervasive sexual harassment and hostile work environment.

75. As a result of Defendants' discriminatory and retaliatory acts, Plaintiff has suffered and will continue to suffer substantial losses, including loss of past and future earnings and other

employment benefits, and has suffered other monetary damages and compensatory damages for, *inter alia*, mental anguish, emotional distress, humiliation, and loss of reputation.

### FOURTH CLAIM AGAINST DEFENDANT STRAUHS
*(Direct Liability and Aiding and Abetting Liability under the NYCHRL)*

76. Plaintiff repeats, reiterates and realleges each and every allegation set forth above with the same force and effect as if here fully set forth at length.

77. Section 8–107(1)(a) of NYCHRL makes it unlawful "for an employer or an employee or agent thereof" to create a hostile work environment. N.Y.C. Admin. Code § 8–107(1)(a).

78. Defendant Strauhs actually participated in the conduct giving rise to the hostile work environment claim because she continued to invite Lazarus to the store, even though she knew that he was sexually harassing Plaintiff, and his repeated overtures and lewd comments created a hostile work environment for Plaintiff.

79. Additionally, Defendant Strauhs aided and abetted the unlawful discriminatory practice, in violation of the NYCHRL, because she failed to take remedial action when Plaintiff complained about the sexual harassment and hostile work environment.

80. Because of Defendant Strauhs' direct involvement in Lazarus' unlawful conduct, and her improper aiding and abetting of the within violations, Plaintiff has suffered and will continue to suffer substantial losses, including loss of past and future earnings and other employment benefits, and has suffered other monetary damages and compensatory damages for, *inter alia*, mental anguish, emotional distress, humiliation, loss of enjoyment of life's pleasures, and loss of reputation.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Vincent Fuentes, demands judgment against Defendants LeLabo, Inc. and The Estee Lauder Companies, Inc., jointly and severally, and against Cali Strauhs, individually, as follows:

    A.    Preliminary and permanent injunctions against the Defendants and their officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with Defendants, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

    B.    A judgment declaring that the practices complained of herein are unlawful and in violation of Title VII and the NYCHRL;

    C.    Permanent removal from Plaintiff's employee file all disciplinary action unlawfully taken against Plaintiff and any such references and defamatory comments anywhere else existing in any of the Defendants' records and databases;

    D.    Damages which Plaintiff has sustained as a result of Defendants' conduct, including back pay, front pay, loss of earning capacity, emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life, that were caused wholly or in part by the Defendants' unlawful activities;

    E.    Punitive damages to the extent authorized by law in an amount commensurate with each Defendants' ability and so as to deter future unlawful conduct;

    F.    Awarding Plaintiff costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees and other costs; and

    H.    all other and further relief that this Court deems just and proper.

Dated: New York, New York  
       June 11, 2018

Respectfully submitted,

JOSEPH & NORINSBERG, L.L.C.

By: _____

Chaya M. Gourarie, Esq.
225 Broadway, Suite 2700
New York, NY 1007
Tel. (212) 227-5700
Fax. (516) 248 – 6027
chaya@norinsberglaw.com
*Attorneys for Plaintiff*

14